[Civ. No. 8003. Second Appellate District, Division One.—December 9, 1931.]

TRUSSLESS ROOF COMPANY et al., Petitioners, v. INDUSTRIAL ACCIDENT COMMISSION and ESTHER MORENO, Respondents.

[Civ. No. 8004. Second Appellate District, Division One.—December 9, 1931.]

TRUSSLESS ROOF COMPANY et al., Petitioners, v. INDUSTRIAL ACCIDENT COMMISSION and CLARICE G. SHUPE et al., Respondents.

[Civ. No. 8005. Second Appellate District, Division One.—December 9, 1931.]

TRUSSLESS ROOF COMPANY et al., Petitioners, v. INDUSTRIAL ACCIDENT COMMISSION and GEORGE C. STURTZ, Respondents.

[Civ. No. 8006. Second Appellate District, Division One.—December 9, 1931.]

TRUSSLESS ROOF COMPANY et al., Petitioners, v. INDUSTRIAL ACCIDENT COMMISSION and WILFRID DUMAINE, Respondents.

[Civ. No. 8007. Second Appellate District, Division One.—December 9, 1931.]

TRUSSLESS ROOF COMPANY et al., Petitioners, v. INDUSTRIAL ACCIDENT COMMISSION and CLINTON RHODES, a Minor, etc., Respondents.

F. Britton McConnell for Petitioners.

A. I. Townsend and Everard L. McMurrin for Respondents.

BISHOP, J., *pro tem.*—But one question is presented by these five proceedings to annul as many awards made by the respondent Commission. A collision between an interurban car and a passenger automobile containing five homeward bound employees of the petitioner, Trussless Roof Company, resulted in injuries to all five. The question presented is, Were these injuries compensable under the Workmen's Compensation, Insurance and Safety Act of 1917 (Stats. 1917, p. 831)? The respondent Commission had jurisdiction to make the affirmative answer they did.

█ Without tracing the steps whereby the principle has been developed, it suffices to note that it is now established that injuries received by an employee, while making use of transportation furnished by and under the control of his employer, as such, are compensable under the Workmen's Compensation Act, though the employee at the time was not at work but was going to or from the place of employment. (*Dominguez* v. *Pendola,* (1920) 46 Cal. App. 220 [188 Pac. 1025], and a multitude of cases reviewed in the notes found in 10 A. L. R. 169, 21 A. L. R. 1223, 24 A. L. R. 1233, and 62 A. L. R. 1438.) The use of the words "as such" is necessary because courtesy rides given by the employer do not give rise to liability under the statutes. (*Boggess* v. *Industrial Acc. Com.,* (1917) 176 Cal. 534 [L. R. A. 1918F, 883, 169 Pac. 75] ; *Gruber* v. *Mercy,* (1929) 7 N. J. Misc. Rep. 241 [145 Atl. 106].) In other words, the transportation has to be furnished as a part of the contract of employment, to come within the rule. (*In re Donovan,* (1914) 217 Mass. 76 [Ann. Cas. 1915C, 778, 104 N. E. 431].)

█ The Commission was warranted by the evidence in concluding that a term of the contracts of employment between petitioner Trussless Roof Company and the five injured men was that on a job beyond the ten-cent fare limit, transportation would be furnished. In a few instances it had been furnished by the use of company trucks. The recognized practice, however, was for one or more of the men to take others, he who furnished the conveyance to be reimbursed on one of two bases, at the option of the employer: Either six cents a mile for the distance driven, or a sum equal to what would have been the round-trip fares of those taken, had the trolley lines been used. No man paid fare to anyone, nor was anyone paid anything by the company with respect to transportation except those who furnished conveyances, and that as indicated. The particular automobile to be used was decided upon from day to day by the men themselves, the employer not knowing in advance, unless incidentally, who was to take whom. Once a week a report was made as to the amount of transportation each one had furnished and the subsequent pay check was increased by the amount allowed for furnishing transportation. The looseness of the arrangements thus

appearing is made the basis of an argument by the petitioner: First, that there was no agreement to furnish transportation; but more earnestly; that in the instant case the transportation was not under the control of the employer. Neither conclusion follows. Two agreements, it seems to us, were entered into with each employee: (a) you shall have your transportation free; (b) I shall pay you, if you take a fellow-employee. That the men decided among themselves which promise they would rely upon each day does not destroy the binding effect of the promises. The one who drives becomes, that day, the agent of the employer in furnishing the promised transportation. And as such he meets the requirement that the vehicle be within the control of the employer. We doubt if this requirement goes further than to distinguish between public means of travel paid for by the employer and that privately furnished by him. In the case of public transportation, there is no liability under the rule which we find governs here. (See *Dominguez* v. *Pendola, supra,* and *California Highway Com.* v. *Industrial Acc. Com.,* (1923) 61 Cal. App. 284 [214 Pac. 658].) In any event, we think it cannot be said that the employer, to be liable, must himself own the vehicle used, nor need he himself drive it. In *McClain* v. *Kingsport Imp. Corp.,* (1922) 147 Tenn. 130 [245 S. W. 837], the employee was himself driving the horse provided for his transportation when it took fright and caused his death. His immediate control did not relieve his employer. In *Littlefield's Case,* (1927) 126 Me. 159 [136 Atl. 724], a fellow-employee had been asked by the employer to take petitioner to work. On the way the fellow-employee left his automobile at a garage for repairs and the two proceeded in a garage car driven by a garage helper. It was held that this was transportation furnished by the employer and injuries received were compensable, *Dominguez* v. *Pendola, supra,* being cited in support of the conclusion. In the instant cases the vehicle used was known by the employer-petitioner to be one of those which would be used. He could have inspected it, along with the others being used from time to time, and if not satisfied that it was safe, he could have withdrawn his agreement to pay for its further use until it was made safe. He knew the men who were driving, and

had he cared not to take the risk incident to their operation of an automobile, he could have declined to employ them as drivers any longer. The situation was within his control, within the reason for the rule given in *California Highway Com.* v. *Industrial Acc. Com., supra,* as follows (p. 288 of 61 Cal. App.) : "The logic and reason of charging an employer in a case where an employee is injured while riding on an instrumentality provided by said employer is that said employer has such instrumentality under his control. He may inspect and repair it; he must see that it is driven by competent and careful drivers. It is his business to look after such a conveyance, just as it is his business to look after the safety of the premises where his employees work."

We are satisfied that the petitioner, Trussless Roof Company, was shown to have furnished, as employer, the vehicle in which four of the five injured men were riding home from their work, and that it had employed the fifth man to drive the other four home. Consequently, the five awards are affirmed.

Conrey, P. J., and Houser, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on January 6, 1932, and an application by petitioners to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on February 4, 1932.