[No. E047593. Fourth Dist., Div. Two. Feb. 24, 2010.]

JENNIFER LOBO et al., Plaintiffs and Appellants, v.
TAMCO, Defendant and Respondent.

KILEY SAVANNAH LOBO, a Minor, etc., et al., Plaintiffs and Appellants,
v.
TAMCO, Defendant and Respondent.

## Counsel

Law Offices of William D. Shapiro and William D. Shapiro for Plaintiffs and Appellants.

Musick, Peeler & Garrett, William A. Bossen and Helen Kim for Defendant and Respondent.

## Opinion

**McKINSTER, Acting P. J.**—Plaintiffs, the survivors of a deputy sheriff killed in a vehicular collision, appeal a summary judgment in favor of defendant Tamco. We reverse in part.

### BACKGROUND

Daniel Lobo, a San Bernardino County deputy sheriff, was killed on October 11, 2005, as the result of allegedly negligent operation of a motor vehicle by defendant's employee Luis Duay Del Rosario while acting in the course and scope of his employment by defendant Tamco. Del Rosario was leaving the premises of his employer, Tamco. As he drove his car out of the driveway and onto Arrow Highway, he failed to notice three motorcycle deputies approaching with lights and sirens activated. Deputy Lobo was unable to avoid colliding with Del Rosario's car and suffered fatal injuries.

Deputy Lobo's widow, Jennifer Lobo, filed a wrongful death suit on behalf of herself and the Lobos' minor daughter, Madison. Kiley and Kadie Lobo, minor daughters of Deputy Lobo, filed a separate wrongful death action through their guardian ad litem. Both suits alleged that Del Rosario was

acting within the course and scope of his employment by Tamco at the time of the accident. The cases were consolidated by the superior court.

Tamco filed a motion for summary judgment or summary adjudication of issues, contending that the evidence established as a matter of law that Tamco was not vicariously liable for Deputy Lobo's death, in that Del Rosario was not acting within the course and scope of his employment, but was merely leaving work at the end of his work day, intending to go home, and was driving his personal vehicle. Kiley and Kadie Lobo filed opposition to the motion; Jennifer and Madison Lobo joined in the opposition.[1]

The court granted summary judgment and entered a judgment of dismissal as to defendant Tamco. Plaintiffs filed separate notices of appeal. We consolidated the appeals.

## LEGAL DISCUSSION

### PLAINTIFFS DEMONSTRATED THAT THERE IS A TRIABLE ISSUE OF FACT

*Standard of Review*

A defendant moving for summary judgment need only show that the plaintiff cannot establish one element of the cause of action. (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 853–854 [107 Cal.Rptr.2d 841, 24 P.3d 493] (*Aguilar*); see also Code Civ. Proc., § 437c, subd. (p)(2).) If the defendant meets its initial burden of proving the nonexistence of an element of the cause of action, the burden shifts to the plaintiff to show that there is a material issue of fact for a jury to determine. (*Aguilar*, at p. 850.) All reasonable inferences must be drawn in favor of the plaintiff, and if a reasonable trier of fact could find for the plaintiff, the motion must be denied. (*Id.* at pp. 856–857.) We use a de novo standard of review for a ruling granting summary judgment.[2] (*Wachovia Bank v. Lifetime Industries, Inc.* (2006) 145 Cal.App.4th 1039, 1048 [52 Cal.Rptr.3d 168] [Fourth Dist., Div. Two].)

Here, we will assume that defendant met its initial burden. As we discuss below, however, plaintiffs also met their burden, establishing that there is a

---

[1] The motion also sought summary judgment or adjudication on a cause of action for premises liability. Plaintiffs had previously notified Tamco that they were not pursuing that theory of liability and did not oppose the motion as to that cause of action.

[2] Tamco argues that we must affirm the trial court's ruling if its factual findings are supported by substantial evidence. This is not the standard of review which applies to summary judgments.

triable issue of fact as to whether the conditions of Del Rosario's employment required him to have his personal vehicle available for his employer's benefit.

### *The Evidence Supports a Finding in Favor of Plaintiffs on a Respondeat Superior Theory*

■ Under the theory of respondeat superior, employers are vicariously liable for tortious acts committed by employees during the course and scope of their employment. (*John Y. v. Chaparral Treatment Center, Inc.* (2002) 101 Cal.App.4th 565, 574 [124 Cal.Rptr.2d 330] [Fourth Dist., Div. Two].) However, under the "going and coming" rule, employers are generally exempt from liability for tortious acts committed by employees while on their way to and from work because employees are said to be outside of the course and scope of employment during their daily commute. (*Huntsinger v. Glass Containers Corp.* (1972) 22 Cal.App.3d 803, 807 [99 Cal.Rptr. 666] [Fourth Dist., Div. Two] (*Huntsinger*).)

"A well-known exception to the going-and-coming rule arises *where the use of the car gives some incidental benefit to the employer.* Thus, the key inquiry is whether there is an incidental benefit derived by the employer. [Citation.]" (*State Farm Mut. Auto. Ins. Co. v. Haight* (1988) 205 Cal.App.3d 223, 241 [252 Cal.Rptr. 162].) This exception to the going and coming rule, carved out by this court in *Huntsinger, supra,* 22 Cal.App.3d 803, has been referred to as the "required-vehicle" exception. (*Tryer v. Ojai Valley School* (1992) 9 Cal.App.4th 1476, 1481 [12 Cal.Rptr.2d 114].) The exception can apply if the use of a personally owned vehicle is either an express or implied condition of employment (*Hinojosa v. Workmen's Comp. Appeals Bd.* (1972) 8 Cal.3d 150, 152 [104 Cal.Rptr. 456, 501 P.2d 1176]), or if the employee has agreed, expressly or implicitly, to make the vehicle available as an accommodation to the employer and the employer has "reasonably come to rely upon its use and [to] expect the employee to make the vehicle available on a regular basis while still not requiring it as a condition of employment." (*County of Tulare v. Workers' Comp. Appeals Bd.* (1985) 170 Cal.App.3d 1247, 1253 [216 Cal.Rptr. 885].)[3]

Here, the evidence produced by the parties showed that Tamco manufactures steel bars used in construction. Del Rosario, a metallurgist, is employed by Tamco as its manager of quality control. He has been so employed for 16 years. According to his written job description, one of his responsibilities is

---

[3] Because benefit to the employer is one of the principal considerations under both the tort rule of respondeat superior and workers' compensation law, the application of the going and coming rule is similar for both purposes. (*Hinman v. Westinghouse Elec. Co.* (1970) 2 Cal.3d 956, 962, fn. 3 [88 Cal.Rptr. 188, 471 P.2d 988]; *Huntsinger, supra,* 22 Cal.App.3d at pp. 807–809.)

to "Answer all customer complaints and if necessary, visit customers [*sic*] facilities to gain information and/or maintain customer relations." Del Rosario testified at his deposition that if a customer called with quality concerns, he would accompany a sales engineer to the site so that he could answer any technical questions. The company did not provide a company car for that purpose. Although he would most often ride in the sales engineer's car, he did on occasion use his own car for that purpose if no sales engineer was available. When Del Rosario used his own car to visit a customer site, he was reimbursed for mileage.

Del Rosario testified that he had visited customer sites "very few" times during the 16 years he worked at Tamco. During those 16 years, he estimated, he had used his own car 10 times or fewer. During 2005, the year of the accident, he visited customer sites five times or fewer, but on some of those occasions, he drove his own car.[4] His supervisor, James Crompton, testified that as of July 2006, the date of his first deposition, he had been Del Rosario's supervisor for roughly two years. During that period, he had approved Del Rosario's expenses for driving to a customer site two or three times.

Both Del Rosario and Crompton testified that Del Rosario's physical presence was essential when customers had quality complaints because he was the sole employee with the expertise to determine whether products were defective. Crompton testified that Del Rosario is required to use his personal car to discharge that duty. He stated that Tamco does not provide Del Rosario with a company car in part because of the infrequency of customer complaints. It also does not provide company cars "at that level." Crompton stated that having Del Rosario present to speak to a customer's technical experts facilitates communications when problems arise. Del Rosario acknowledged that Tamco received a benefit from the use of his car.

When Del Rosario left Tamco on the day of the accident, he was going home. However, if he had been asked to visit a customer site, he "would have gotten in [his] car and used [his] car to go to that facility," just like on any other day. He kept boots, a helmet and safety glasses in his car.

This evidence is clearly sufficient to support the conclusion that Tamco requires Del Rosario to make his car available whenever it is necessary for him to visit customer sites and that Tamco derives a benefit from the availability of Del Rosario's car. Tamco, however, emphasizes that it was rare that Del Rosario visited customer facilities or jobsites, and contends that in

---

[4] It is not completely clear whether Del Rosario meant to indicate that he drove his car multiple times in 2005, but that is an inference which could be drawn from his testimony.

all cases in which the "required-vehicle" exception to the going and coming rule has been found applicable, driving was an "integral" part of the employee's job and that Del Rosario's occasional use of his own car to visit customers is insufficient as a matter of law to invoke the exception.

■ Tamco has not cited any case in which a court has addressed a contention that the employee's use of his own car was too infrequent to warrant application of the exception and we have found none. It relies on *Tryer v. Ojai Valley School, supra,* 9 Cal.App.4th 1476, to argue that the required-use doctrine depends upon a finding that the employee regularly used his or her vehicle for work, that the job "embrace[d]" driving or that driving formed an "integral part" of the job. (*Id.* at pp. 1481–1482.) We disagree. First, in *Tryer,* the plaintiff did not use her own vehicle to accomplish her work; she used it to commute between two different work locations. (*Id.* at p. 1482.) Because the court rejected Tryer's claim on that basis and not because her use of her vehicle was too infrequent to justify application of the doctrine, the court's characterization of the scope of the doctrine is dictum. Second, although it is factually correct that the cases which have found the doctrine applicable involved more frequent use of the employee's personal vehicle than appears to be the case here, application of the doctrine turns on whether the employer expressly or implicitly required the employee to make the vehicle available or had reasonably come to expect that the vehicle would be available for work purposes and whether the employer derived a benefit from the availability of the vehicle. (*State Farm Mut. Auto. Ins. Co. v. Haight, supra,* 205 Cal.App.3d at p. 241; *Hinman v. Westinghouse Elec. Co., supra,* 2 Cal.3d at p. 962, fn. 3; *County of Tulare v. Workers' Comp. Appeals Bd., supra,* 170 Cal.App.3d at p. 1253.) If the employer requires or reasonably relies upon the employee to make his personal vehicle available to use for the employer's benefit and the employer derives a benefit from the availability of the vehicle, the fact that the employer only rarely makes use of the employee's personal vehicle should not, in and of itself, defeat the plaintiff's case. ■ Here, Crompton testified that Tamco required Del Rosario to make his car available rather than providing him with a company car in part *because* the need arose infrequently. Thus, the availability of Del Rosario's car provided Tamco with both the benefit of insuring that Del Rosario could respond promptly to customer complaints even if no sales engineer was available to drive him to the customer's site and the benefit of not having to provide him with a company car. Based on this evidence, a reasonable trier of fact could find that the "required-vehicle" exception does apply. Accordingly, the motion for summary judgment was improperly granted. (*Aguilar, supra,* 25 Cal.4th at pp. 856–857.)

## DISPOSITION

The summary adjudication is affirmed as to the causes of action for premises liability in both complaints. The judgment is reversed as to the motor vehicle and negligence causes of action in both complaints.

Plaintiffs are awarded their costs on appeal.

Gaut, J., and Miller, J., concurred.

Respondent's petition for review by the Supreme Court was denied June 17, 2010, S181493.